ORIGINAL

FILED
DISTRICT OF WYOMING
CHEYENNE

2003 MAR 17  AM 9: 56

CLERK
U.S. DISTRICT COURT

Dennis W. Lancaster
Lancaster Law Offices, P.C.
631 So Washington Ave., Suite B
PO Box 1589
Afton, WY 83110
Phone: (307) 885-4529
Fax: (307) 885-4531

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| SHANTELL SWENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 02CV1062B |
| | ) | |
| LINCOLN COUNTY SCHOOL | ) | |
| DISTRICT NO. 2, A Wyoming | ) | |
| School District, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT, LINCOLN COUNTY SCHOOL DISTRICT NO. 2's, MOTION FOR SUMMARY JUDGMENT

**COMES NOW** the Defendant, LINCOLN COUNTY SCHOOL DISTRICT NO. 2, herein

after referred to as "DISTRICT," by and through its attorney, Dennis W. Lancaster of Lancaster Law

Offices, P.C., and does hereby file this Memorandum in Support of its Motion for Summary Judgment filed herein. Attached to this Memorandum are the Affidavits of Dixie Roberts, Violet Teichert & Jana Dayton.

## FACTUAL BACKGROUND

This action relates to the allegations raised in the Complaint filed by the Plaintiff, Shantell Swenson, wherein she alleges that the District failed to provide her a Free Appropriate Public Education (FAPE) and that she was discriminated against based upon her disability. The Plaintiff has asserted three (3) counts or causes of action against the District; Count 1: Alleging discrimination and violation of the American's with Disabilities Act (ADA); Count 2: Alleging violation of the Rehabilitation Act of 1973 (Section 504) and/or Rehabilitation Act; and Count 3: Alleging violation of the Individuals with Disabilities Education Act (IDEA).

The Plaintiff, Swenson, is contending that she is entitled to compensatory damages under all three (3) of the Acts referred to above and also, is seeking punitive damages under the Rehabilitation Act.

The Plaintiff's contentions relate to alleged violations of these acts as far as they relate to the auditorium, gymnasium and parking lots and the interior and exterior doors at the Cokeville High School, as well as, allegations relating to violations at Star Valley High School located in Afton, Wyoming.

The Plaintiff attended school in the schools in Cokeville, Wyoming, which schools are

operated under the jurisdiction of the District as is the, Star Valley High School, however, the Plaintiff at no time attended school at the Star Valley High School. The Plaintiff graduated from Cokeville High School in May 2002.

## UNDISPUTED FACTS

1.     The District operates schools in both Cokeville, Wyoming, and the Star Valley, Wyoming, area which schools are separated by approximately 50 miles.

2.     The Plaintiff attended school in Cokeville, Wyoming, for her entire school career from Kindergarten through 12th Grade.

3.     The Plaintiff graduated from Cokeville High School in May 2002 with a G.P.A. of 3.67, a class rank of 8 out of 19 students. (*See* Shantell Swenson Deposition page 11.)     The Plaintiff admits that she obtained a good education through the Cokeville schools and this education prepared her to proceed to college where she is presently attending Western Wyoming Community College and obtained various scholarships pertaining to said education. (*See* Deposition of Steve Swenson Page 57.) (*See* Deposition of Pat Swenson Page 9.) (*See* Shantell Swenson deposition Page 22.)

4.     That for the entire time that the Plaintiff was a student in the District's schools, the District provided her with a full-time, one-on-one, physical aide who was responsible for providing for her physical needs and to assure that she was able to participate in school activities, including obtaining access to all classes, classroom events, and

extracurricular events located within the school during the school day.  (*See* Dixie Roberts Affidavit.)

5.    That for a twelve (12) year period, Dixie Roberts served as the physical aide for the Plaintiff and was with her from the time that she arrived at school until she left and that said full-time aide was responsible for assuring that the Plaintiff was able to access all parts of the buildings in which she attended school. (*See* Dixie Roberts Affidavit and Deposition Pages 9 and 10.)

6.    That the Plaintiff, as well as her parents, had no complaints as to the services that were performed by Dixie Roberts as the Plaintiff's full-time physical aide.  (*See* Deposition of Shantell Swenson Page 30.) (*See* Steve Swenson Deposition Page 55.)

7.    That the Cokeville Junior High and High School was condemned by the Wyoming State Fire Marshall necessitating the demolition of the same and the building of a new Cokeville High School and Junior High building.

8.    That the Plaintiff's parents filed a complaint with the Department of Education, Office of Civil Rights, on September 15, 2000. (*See* Complaint Paragraph 5.)

9.    That the complaint with the Office of Civil Rights was resolved and the Department of Education, Office of Civil Rights did, on July 11, 2002, acknowledge the District's prompt and conscientious efforts in resolving the complaint and ensuring that the Commitment To Resolve provisions were met as expeditiously as possible.  (*See*

Deposition Exhibit 3, Steve Swenson Deposition.)

10.     That the Plaintiff and her parents filed a complaint with the State of Wyoming, Department of Education on August 23, 2001.  (*See* Complaint Paragraph 5.)

11.     That the complaint was dismissed by the State of Wyoming on November 28, 2001. (*See* Complaint Paragraph 11 and Steve Swenson Deposition Exhibit 6.)

12.     That Shantell Swenson was at no time a student of Star Valley High School.  (*See* Shantell Swenson deposition Page 59.)

13.     That said Star Valley High School is located within the same School District but is approximately 50 miles from the Cokeville High School.

14.     That the Senior Trip that was planned and arranged for Senior students at Cokeville High School was funded with funds that were raised by the individual members of the Senior Class during their tenure at Cokeville High School and the activity was an activity planned by the Senior Class members pursuant to a long tradition of Cokeville High School.  (*See* Affidavit of Jana Dayton and Affidavit of Violet Teichert.)

15.     That the Plaintiff, Shantell Swenson, advised the Senior Class Officers, as well as School District Personnel, that she did not plan on attending the Senior Trip.  (*See* Deposition of Shantell Swenson Page 128.) (*See* Affidavit of Jana Dayton and Affidavit of Violet Teichert.)

16.    That Shantell Swenson was provided transportation to school in a handicap accessible bus until sometime during her Junior year when she made the decision to not ride the bus and to arrange for her own transportation to school where she then used her motorized wheelchair to travel to school and her home was located approximately 1/2 block away from the school. (*See* Affidavit of Dixie Roberts.) (*See* Deposition of Steve Swenson, Deposition Exhibit 1.)

17.    Up to the time that the Plaintiff decided not to use school transportation, she was picked up in a handicap bus and delivered to the school and the bus driver and other school personnel escorted her into the school building at which time she was then met by her full-time physical aide. (*See* Affidavit of Dixie Roberts.)

18.    That after the Plaintiff made the decision to not use the school provided transportation, she then used her wheelchair to go to school and was then met at school by the full-time physical aide. (*See* Affidavit of Dixie Roberts.)

19.    That the applicable statute of limitation in this matter is W.S. § 1-3-115 providing for a two (2) year limitation period for actions upon a liability created by Federal Statute for which no period of limitation is provided.

20.    That this action was commenced against this Defendant on August 21, 2002.

21.    That any allegations against the District prior to August 20, 2000, are time barred.

# **ARGUMENTS**

I.   **THE PLAINTIFF HAS NO CLAIM UNDER THE IDEA, AS SHE HAS GRADUATED AND IS NO LONGER A STUDENT.**

In Count Three (3) of the Complaint, the Plaintiff alleges that the District violated the provisions of the IDEA through intentional discrimination, and as a result Swenson suffered embarrassment, humiliation, mental anguish and emotional distress, making the District liable for compensatory damages.   However, the Complaint clearly establishes that Swenson is no longer a student at any school operated by the District, and did in fact graduate from high school before filing suit against the District.   (*See* Paragraphs 1 and 8 of Complaint.)   In view of the fact that she is not a student, Swenson has no remedy available under the IDEA, as that statute permits relief only in the form of the provision of services to current students, and does not permit the awarding of damages.

The language of the IDEA is silent with regard to the availability of damages, as the entire mechanism of the IDEA for remedying the harms at which it is directed is  for parents to seek changes to a student's program at school.   While there appear to be no Tenth Circuit cases specifically addressing the issue of whether damages are an  authorized or appropriate remedy under the IDEA, every other circuit court which has faced the issue has determined that a plaintiff may not recover damages under the IDEA.   For example, in the recent case of *Polera v. Board of Education of Newburgh Enlarged City School District,* 288 F.3d 478, 486 (2d Cir. 2002), the court rejected the

concept of a damages claim under the IDEA, concluding:

> The purpose of the IDEA is to provide educational services, not compensation for personal injury, and a damages remedy--as contrasted with reimbursement of expenses—is fundamentally inconsistent with this goal. The availability of damages also would undercut the IDEA's carefully structured procedure for administrative remedies, a mechanism that encourages parents to seek relief at the time that a deficiency occurs and that allows the educational system to bring its expertise to bear in correcting its own mistakes. We therefore hold that monetary damages are not available under the IDEA.

This same reasoning was followed by the court in *Sellers v. School Board of Manassas, Virginia,* 141 F.3d 524, 527 (4th Cir.), *cert. denied,* 525 U.S. 871 (1998), which found that tort-like damages are simply inconsistent with IDEA's statutory scheme. In the words of the Fourth Circuit:

> The touchstone of a traditional tort-like remedy is redress for a broad range of harms "associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages." *United States v. Burke,* 504 U.S. 229, 239, 112 S.Ct. 1867, 1873, 119 L.Ed.2d 34 (1992) (interpreting Title VII). By contrast, the touchstone of IDEA is the actual provision of a free appropriate public education.
>
> To advance this goal, IDEA provides a panoply of procedural rights to parents to ensure their involvement in decisions about their disabled child's education. *See Burlington,* 471 U.S. at 368, 105 S.Ct. at 2001-02; *see also Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 206, 102 S.Ct. 3034, 3050-51, 73 L.Ed.2d 690 (1982). For example, parents may examine all relevant records relating to their disabled child's identification, evaluation, placement, and receipt of a free appropriate public education. 20 U.S.C. §§ 1415(b)(1)(A). They must receive written notice prior to changes in the child's identification, evaluation, placement, or receipt of a free appropriate public education. *Id.* §§ 1415(b)(1)(C). They also may present complaints with respect to such matters. *Id.* §§ 1415(b)(1)(E). They can air these complaints in an "impartial due process hearing," *id.* §§ 1415(b)(2), and, in some cases, can appeal the findings and decision rendered in that hearing. *Id.* §§ 1415(c). Finally, a party aggrieved by the findings or decision of a

hearing officer may seek judicial review. *Id.* §§ 1415(e)(2).

The purpose of these procedural mechanisms is to preserve the right to a free appropriate public education, not to provide a forum for tort-like claims of educational malpractice.

Other courts which have expressed the same view that damages are unavailable under the IDEA include *Crocker v. Tenn. Secondary Sch. Athletic Ass'n,* 980 F.2d 382, 386-87 (6th Cir.1992) ("[W]e do not find case authority interpreting the [EHA] to allow an award of general damages for emotional injury or injury to a dignitary interest;" the plaintiff "cannot recover general damages under the EHA" or under § 1983 for violations of the EHA); *Charlie F. v. Board of Education of Skokie School District,* 98 F.3d 989 (7th Cir.1996) ("[T]he structure of the statute—with its elaborate provision for educational services and payments to those who deliver them—is inconsistent with monetary awards to children and parents"); *Fort Zumwalt School District v. Clynes*, 119 F.3d 607 (8th Cir. 1997) (parents of disabled child were not entitled to damages under IDEA for physical illness or emotional distress allegedly caused by school district's allegedly incompetent and unprofessional failure to provide child a free appropriate public education, and damages were not available for IDEA violations); *Heidemann v. Rother,* 84 F.3d 1021, 1033 (8th Cir.1996) ("[G]eneral and punitive damages for the types of injuries alleged by plaintiffs are not available under the IDEA"); *Witte v. Clark County Sch. Dist.,* 197 F.3d 1271, 1275 (9th Cir.1999) (finding damages unavailable under the IDEA and noting that the phrase "appropriate relief . . . is usually construed as a mere grant of jurisdiction to enforce and supplement the administrative procedures for

identification, evaluation, and placement of the child, and not of authority to award retrospective damages"); *Brantley By and Through Brantley v. Independent School District No. 625*, 939 F. Supp. 649 (D. Minn. 1996) (handicapped child could not recover monetary damages for relief from past deprivation of educational services under IDEA; IDEA did not provide for monetary damages for denial of free appropriate public education and Congress did not intend monetary damages to be appropriate relief under IDEA).

In view of this overwhelming authority rejecting the right of plaintiffs to obtain damages through a suit under the IDEA, this Court must reject Swenson's request for compensatory damages under the IDEA and grant summary judgment to the District on Count Three of the Complaint.

## II.   THE PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES UNDER THE REHABILITATION ACT OR THE ADA.

As part of the relief requested by Swenson, in Count Two of the Complaint she has asked this Court to award punitive damages under the provisions of the Rehabilitation Act. While at one time there may have been some dispute in the courts over whether punitive damages could be awarded in a private cause of action under the Rehabilitation Act or the ADA, the Supreme Court has recently made it very clear that a plaintiff is not entitled to punitive damages under these acts. In *Barnes v. Gorman*, 536 U.S. 181 (2002), the Supreme Court specifically addressed the issue in a case brought by a handicapped individual under both § 202 of the ADA, 42 U.S.C. § 12132, and § 504 of the

Rehabilitation Act, 29 U.S.C. § 794(a). The plaintiff, a paraplegic, contended that he was entitled to punitive damages under both acts arising out of an incident in which he suffered injuries and embarrassment when he was arrested for a minor offense and was strapped into a police van. While he was being transported to the police station, the straps restraining him came loose and he was thrown to the floor of the police van, causing bodily injuries and breaking open his urine bag.

The basis of the plaintiff's suit was that the police department's failure to maintain appropriate policies for the arrest and transportation of persons with spinal cord injuries was discrimination on the basis of his disability. After the jury awarded punitive damages, the punitive damage award was upheld by the Eighth Circuit. However, the Supreme Court reversed, relying upon the fact that both the ADA and the Rehabilitation Act provide that their remedies are coextensive with the remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq., which prohibits racial discrimination in federally funded programs and activities. The Court concluded that punitive damages were not an appropriate remedy for a violation of Title VI because that provision was akin to a contractual requirement, and punitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract. The Court further noted that Title VI funding recipients have not, merely by accepting funds, implicitly consented to liability for punitive damages. Therefore, the Court concluded, because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may

not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act.

In light of this clear statement of law by the U.S. Supreme Court refuting Swenson's right to punitive damages under the very same provisions of the ADA and the Rehabilitation Act relied upon by Swenson, this Court must grant summary judgment to the District with regard to Swenson's request for punitive and exemplary damages.

### III. THE DISTRICT DID NOT VIOLATE THE ADA OR THE REHABILITATION ACT WITH RESPECT TO THE PLAINTIFF BECAUSE SHE WAS PROVIDED WITH A FULL-TIME PHYSICAL AIDE TO ALLOW FULL ACCESS TO THE SCHOOL AT ALL TIME.

As noted in the Affidavit and Deposition of Dixie Roberts, Swenson was provided with a full-time physical aide to assist Swenson during the school day in negotiating the halls and doorways of Cokeville High School. This aide was always present with Swenson to accompany her to class and to ensure that Swenson was allowed to participate in all school activities, including access to the auditorium, gymnasium, parking lot, and other school facilities. For purpose of this motion, if the Court accepts the allegations in Plaintiff's Complaint that there were times during Swenson's attendance at school that construction and remodeling necessitated minor technical deviations from the requirements of the ADA Accessibility Guidelines for Buildings and Facilities, these deviations did not impact on Swenson because of the assistance of her full-time aide.

Therefore, Swenson cannot show any compensable injury under the ADA or Rehabilitation

Act arising out of any deviations from the ADA Accessibility Guidelines for Buildings and Facilities at her high school, and is thus not entitled to recover damages from the District. *See Access Now, Inc. v. South Florida Stadium Corp.*, 161 F. Supp. 2d 1357 (S.D. Fla. 2001) (disabled individual's entry into place of public accommodation does not automatically confer upon him presumption that he was injured by any and all architectural barriers therein; his entitlement to relief depends on his showing that he was in fact injured, or subject to discrimination, as result of alleged violations).

Moreover, it is well established that the provision of an auxiliary aide to assist a disabled person to overcome particular problems associated with his or her disability is a reasonable accommodation of the disability under the ADA and Rehabilitation Act. For example, the provision of an aide for the assistance of a disabled employee is specifically mentioned in the section of the ADA which prohibits discrimination against employees on the basis of disabilities. *See* 42 U.S.C. § 12111(9) ("The term 'reasonable accommodation may include . . . the provision of qualified readers or interpreters, *and other similar accommodations for individuals with disabilities*") (emphasis added). Thus, an employer can meet the requirements of the ADA either by modifying the workplace or school building to accommodate the disabled employee—such as providing all written materials in Braille—or by providing an aide to serve as a reader. As stated in *Borkowski v. Valley Central School District,* 63 F.3d 131, 142 (2d Cir. 1995), interpreting the Rehabilitation Act:

> Both the regulations implementing Section 504 and the cases applying the Rehabilitation Act contemplate the possibility that the use of assistants may be

reasonable accommodations. *See* 34 C.F.R. §§ 104.12(b) ("Reasonable accommodation may include: . . . (2) . . . the provision of readers or interpreters, and other similar actions."); 45 C.F.R. Pt. 84 App. A at 360 (a school district may be required to provide a blind teacher with a sighted teacher's aide); *see also Overton v. Reilly,* 977 F.2d 1190, 1195 (7th Cir.1992) (stating that provision of an assistant to speak on the phone may be a required accommodation for an individual unable to communicate effectively by phone); *Arneson v. Sullivan,* 946 F.2d 90, 93 (8th Cir.1991) (requiring that a reader be provided as an accommodation); *Nelson* [*v. Thornburgh*]*,* 567 F. Supp. [369] at 379-82 [(E.D. Pa. 1983)](requiring the hiring of readers as a reasonable accommodation for blind employees).

*See also* 29 C.F.R. §§ 1630 app. at 344 ("Providing personal assistants, such as a page turner for an employee with no hands or a travel attendant to act as a sighted guide to assist a blind employee on occasional business trips, may also be a reasonable accommodation"); *Hedgepeth v. Tennessee,* 33 F. Supp. 2d 668 (W.D. Tenn. 1998) (reasonable accommodations include providing transportation, parking spaces, or a personal assistant to assist employee); *Nihiser v. Ohio EPA,* 979 F. Supp. 1168 (S.D. Ohio 1997) (same); *cf. Hoffman v. Fidelity Brokerage Services, Inc.,* 959 F. Supp. 452 (S.D. Ohio 1997) (under the ADA, an employee cannot insist that her employer provide a specific accommodation if another reasonable accommodation is instead provided).

It is equally apparent that providing a disabled individual with the services of a personal assistant in order to guide that person through temporary architectural barriers, such as doors which may not be fully accessible to the disabled during construction, fully satisfies the mandate of the ADA and the Rehabilitation Act. *See Hoekstra By and Through Hoekstra v. Independent School Dist. No. 283, St. Louis Park, Minnesota,* 916 F. Supp. 941 (D. Minn. 1996) (school could not be

liable to handicapped student, who required wheelchair for getting around school, for damages under ADA or Rehabilitation Act for failure to provide student with independent access to elevator when student had access to elevator on an as-needed basis with assistance of staff member and school had valid reason for retaining elevator key); *Martin v. City of Los Angeles*, 209 Cal. Rptr. 301 (Ct. App. 1984) (police station met federal and state requirements for access to the physically handicapped where the department dispatched officers to meet citizens if a physical handicap might interfere with the citizen's ability to get to the station, parking space was reserved for handicapped persons in well-lighted parking lot, and where rear entrance near the handicapped parking was used as wheelchair entrance, even though the rear entrance was kept locked and handicapped person had to ring buzzer and wait to be admitted); *cf. Tandy v. City of Wichita*, 208 F. Supp. 2d 1214 (D. Kan. 2002) (ADA did not require city transit authority's fixed bus route system to be fully accessible to persons with mobility impairments, as long as city provided comparable para-transit services to eligible individuals).

As these cases indicate, the provision of an aide for Swenson was sufficient accommodation of her disability, particularly in light of the fact that construction at the high school prevented the District from fully complying with the architectural requirements of the ADA. For these reasons, the District is entitled to summary judgment on all claims arising from Swenson's alleged difficulties in obtaining access to all areas of her high school.

**IV.    SWENSON CANNOT DEMONSTRATE A VIOLATION OF THE ADA OR REHABILITATION ACT BECAUSE SHE CANNOT SHOW ANY FACTS THAT DEMONSTRATE BAD FAITH ON THE PART OF THE DISTRICT.**

The courts have long recognized that in order for a student to establish a violation of the ADA or Rehabilitation Act, the student must first demonstrate "bad faith" or "gross misjudgment" on the part of the school district. *Birmingham v. Omaha School District*, 220 F.3d 850 (8th Cir. 2000); *BD v. DeBuono*, 130 F. Supp. 2d 401 (S.D.N.Y. 200); *K.U. By and Through Michael U. v. Alvin Independent School District*, 991 F. Supp. 599 (S.D. Tex. 1998); *Doe v. Arlington County School Board*, 41 F. Supp. 2d 599 (E.D. Va. 1999).  As noted by the court in *Monahan v. State of Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982), construing the scope of the Rehabilitation Act, "so long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals, we cannot believe that Congress intended to create liability under Section 504.

This standard was recently applied in a fact situation which was very similar to the present case in *Hoekstra By and Through Hoekstra v. Independent School District No. 283, St. Louis Park, Minnesota*, 916 F. Supp. 941 (D. Minn. 1996), which considered an action brought by a student who suffered from physical ailments which required her to use a wheelchair.  The student claimed that the school deprived her of a free appropriate education under the IDEA and denied her independent

access to school facilities in violation of the ADA by virtue of the fact that she was unable to use an elevator necessary to reach her classes without assistance from a staff member. The district court dismissed the student's claim on the basis of the fact that there were no facts to suggest that the district acted in bad faith or exercised gross misjudgment in delaying the student's acquisition of an elevator key. The court of appeals affirmed, noting that the application of a bad faith standard would harmonize the IDEA and the ADA by "balancing the rights of handicapped children, the responsibilities of state educational officials, and the competence of courts to make judgments in technical fields." *Id.* at 627 (quoting *Monahan v. State of Nebraska*, 687 F.2d at 1171). Thus, the court concluded, "we hold that in the context of educational services for disabled children, a showing of gross misjudgment or bad faith on the part of school officials is necessary to succeed on an ADA claim." *Id.*

Thus, Swenson's ADA and Rehabilitation Act claims cannot prevail in the absence of a showing of bad faith or gross misjudgment on the part of school officials. Anticipating this shortcoming in her action against the District, Swenson has made some conclusory allegations of bad faith in her Complaint. However, beyond these bare allegations there are no facts before this Court to demonstrate bad faith or gross misjudgment on the part of school or District officials, and thus this Court must grant summary judgment to the District on Counts One and Two. *See BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089 (10th Cir. 1999) (conclusory allegations

insufficient to establish a fact for summary judgment purposes).

## V.   SWENSON HAS NO CLAIM FOR DISCRIMINATION OR VIOLATION OF ANY FEDERAL OR STATE PROTECTED RIGHTS ASSOCIATED WITH HER CLAIMS CONCERNING THE SENIOR TRIP.

The Plaintiff, in Paragraph D, Page 10 and 11 of her Complaint alleges that the District failed to allow equal participation by the Plaintiff in the Senior Trip in the Spring of 2002. It is undisputed that the Senior Trip was an event that did not obtain any School District funding, was planned by the members of the Senior Class after meetings involving the entire Senior Class, (*See* Affidavits of Jana Dayton and Violet Teichert.) As noted in the Affidavit of these two members of the Cokeville Senior Class Presidency, this is an activity that the Senior Class members have raised funds for during their school years at Cokeville High School and that the activity is planned by the students, funded by the students and is not a school activity.

Further as noted in the Affidavit of Violet Teichert and Jana Dayton, as well as the deposition of Shantell Swenson, Shantell Swenson specifically advised the other members of the Senior Class that she was not going on this trip and that she had planned another activity to go to Western Wyoming Community College on that same weekend. (*See* Shantell Swenson Deposition Pages 126 & 128.) Shantell Swenson testified in her deposition on Page 126 in response to the following Question: "So you told them you were not going to go?" Answer by Shantell Swenson, "Correct."

(*See* Shantell Swenson Deposition Page 126.)  Question: "Did you tell the Senior Class Presidency and other members that you planned on going to Western Wyoming that same weekend and would not be going anyway?"  Answer by Shantell Swenson, "I said, yes I did."  (*See* Shantell Swenson Deposition Page 128.)  Question, "Now, did there come a time that you changed your mind?"  Answer by Shantell Swenson, "I was having second thoughts but no, I didn't, I didn't say yes I am going."  Question: "Did you ever go to them and say yes I want to go?"  Answer by Shantell Swenson, "No."  (*See* Shantell Swenson Deposition Page 128.)

The Plaintiff wants this Court to hold the District liable under a far fetched theory that the District failed to allow her equal participation in the Senior Trip, however, by her own accord she advised the members of the Senior Class, who were planning the trip, as well as other School Officials that she did not plan on going on the trip.  Swenson wants the Court to assess some liability to the District and basically say that even though she specifically told the other class members that she was not going that the District is still responsible for denying her the right to equally participate.  This was an activity outside of the normal realm of school activities, it was clearly a voluntary event and if Swenson chose not to go then that was her right but to now say that the District is liable and responsible is incorrect.  It is obvious that the Plaintiff was trying to set the District up so as to enhance her claim against it by saying, No, I am not going on the trip but you are now responsible because you failed to allow me equal participation.  What was the Senior Class to do after the

Plaintiff very clearly advised them that she did not intend to go on this trip?

The Senior Class clearly acted reasonably in accepting Shantell's word that she was not going and therefore, she was not denied equal participation because she chose, on her own, not to go and the District should be granted Summary Judgment on the allegation relating to the Senior Trip.

## VI.  PLAINTIFF'S CLAIMS PRIOR TO AUGUST 20, 2000, ARE TIME BARRED UNDER THE APPLICABLE STATUTE OF LIMITATION

Plaintiff's Complaint is very vague as to the alleged time frame for the events complained of other than the allegations relating to the Senior Trip in the Spring of 2002.  The Complaint alleges that potential violations occurred within the last six (6) years of filing of the complaint.  There is no specific statute of limitations in either the ADA or the Rehabilitation Acts and therefore, Courts construing these statutes must apply these principles as those used in Federal Civil Rights Actions under 42 U.S.C. § 1983 and thus borrow the most appropriate state law statute of limitation.

Generally if there is not a specific state statute of limitation relating to federal claims, courts treat ADA and Rehabilitation Act claims like personal injury actions, and borrow the relevant state limitations period for personal injury suits.  *See, e.g., Sigros v. Walt Disney World Co.*, 190 F. Supp. 2d 165 (D. Mass. 2002) (three-year statute of limitations for personal injury actions under Massachusetts law provided the limitations period for resort patron's ADA claims, arising out of patron's wheelchair accident); *Carney v. New York State Div. of Housing and Community Renewal,*

976 F. Supp. 259 (S.D.N.Y. 1997) (former state employee's disability discrimination claims under Rehabilitation Act of 1973 were governed by state's three-year statute of limitations applicable to personal injury claims); *Deck v. City of Toledo*, 56 F. Supp. 2d 886 (N.D. Ohio 1999) (regardless of whether Ohio's disability rights statute or personal injury statute was the most analogous to Americans with Disabilities Act, a two-year statute of limitations applied to claims seeking to require Ohio municipality to comply with the ADA's requirement that all streets and sidewalks altered after January 26, 1992 be in compliance with the ADA's standards for curb ramps); *Saylor v. Ridge*, 989 F. Supp. 680 (E. D. Pa. 1998) (Pennsylvania's two-year statute of limitations for personal injury claims governs claims under both Rehabilitation Act and Title II of the ADA); *Eber v. Harris County Hosp. Dist.*, 130 F. Supp.2d 847 (S. D. Tex. 2001) (two-year statute of limitation for personal injury claims is applicable to claims brought in Texas under Title II of Americans with Disabilities Act). Some states have looked to other limitations statutes. *See, e.g., Kramer v. Regents of University of California*, 81 F. Supp. 2d 972 (N. D. Cal.1999) (three-year statute of limitations applicable to California disability discrimination statutes, rather than that state's one-year general personal injury statute of limitations, was applicable to California university student's ADA and Rehabilitation Act claims); *Speciner v. NationsBank, N.A.*, 2002 WL 1205071 (D. Md. 2002) (Maryland's three-year limitations statute for state law civil actions applied to a claim for violations of the Americans with Disabilities Act's (ADA) section governing alterations of a building area containing primary

functions); see also *Conners v. Maine Medical Center*, 42 F. Supp. 2d 34 (D. Me.1999) (a claim for discrimination brought under the ADA was a claim for personal injury to which Maine six-year statute of limitations for all civil actions applied, rather than Maine two-year statute of limitations for claims brought under the Maine Human Rights Act (MHRA).

There appears to be no reported cases arising from Wyoming in which a Court has specifically considered a length of a limitation period under the ADA or Rehabilitation Act. However, Wyoming has enacted a specific statute of limitation for cases where liability is created by a federal statute. W.S. § 1-3-115 provides as follows:

**§ 1-3-115.  Liability created by federal statute**.

> All actions upon a liability created by a federal statute, other than a forfeiture or penalty, for which no period of limitations is provided in such statute, shall be commenced within two (2) years after the cause of action has accrued. (Laws 1943, ch. 77, § 1; C.S. 1945, § 1957, § 1-23; Laws 1977, ch. 188, § 1.)

Since the alleged allegations set forth in the Plaintiff's Complaint relate to actions upon which a liability is created by federal statute, for which no time period of limitation is provided, this section would therefore set forth a two (2) year statute limitation after the cause of action has accrued.

Therefore, any claim of the Plaintiff prior to August 20, 2000, is time barred and any allegations prior to that time, if raised in the complaint, are thus barred.

## VII.   ANY CLAIMS OF SWENSON RELATING TO THE PARKING LOT, AS FAR AS ACTIVITIES DURING THE SCHOOL DAY, SHOULD BE STRICKEN

It is undisputed that Swenson was provided school transportation in a handicap accessible bus up through at least her Junior year when she made the election, on her own, to not ride the bus but to arrange for her own transportation.  (*See* Affidavit of Dixie Roberts.) Up to the time that the Plaintiff decided not to use the school provided transportation, she was delivered to and picked up from school in the handicap bus and the bus driver would escort her to and from school and make sure that she had access to the building.  Specifically, because she was transported on the bus, any issues associated with any alleged violations of the Americans with Disabilities Act or its associated guidelines for the parking lot and handicap spaces have no relevance since she was delivered to the school in a bus.  Further, it is undisputed that after the Plaintiff made her own voluntarily election to not ride the bus that she then went from her home, which was located approximately 1/2 block from the school, in her motorized wheelchair to the school and again, she would therefore not have used the parking lot (*See* Shantell Swenson Deposition Page 103.)

Because of the undisputed facts, any issue associated with the parking lot has no relevance or no legal bearing on the Plaintiff obtaining a Free Appropriate Public Education since she would not have used the parking lot for any event during the school day and therefore, has no standing to assert claims associated with the parking lot.

The Complaint is filed by the Plaintiff, not her parents or others, who may have been driving, and therefore, any issue relating to the parking lot during the school day has no standing before this

Court and the District is entitled to Summary Judgment on this issue.

### VIII.   SWENSONS CLAIM S ALLEGING DISCRIMINATION BY EITHER HER PEP-CLUB ADVISOR, HER HOME-EC TEACHER, HER SENIOR CLASS ADVISORS OR SCHOOL ADMINISTRATORS IS BARRED BY THE IMMUNITY PROVIDED FOR IN 20 U.S.C.§§ 6731 et seq.

The Paul D. Cloverdell Teacher Protection Act of 2001 (20 U.S.C. §§ 6731 et seq.) which is part of the No Child Left Behind Act, clearly provides immunity from suit for individual teachers and school administrators.  The Teacher Protection Act states in pertinent part:

**(a) Liability protection for teachers**

Except as provided in subsection (b) of this section, no teacher in a school shall be liable for harm caused by an act or omission of the teacher on behalf of the school if—

(1) the teacher was acting within the scope of the teacher's employment or responsibilities to a school or governmental entity;

(2) the actions of the teacher were carried out in conformity with Federal, State, and local laws (including rules and regulations) in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school;

(3) if appropriate or required, the teacher was properly licensed, certified, or authorized by the appropriate authorities for the activities or practice involved in the State in which the harm occurred, where the activities were or practice was undertaken within the scope of the teacher's responsibilities;

(4) the harm was not caused by willful or criminal

misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety or the individual harmed by the teacher; and

      (5) the harm was not caused by the teacher operating a motor vehicle, vessel, aircraft, or other vehicle for which the State requires the operator or the owner of the vehicle, craft, or vessel to—

      (A) possess an operator's license;

      (B) maintain insurance.

20 U.S.C. § 6736(a).  The term "teacher" is defined as:

    (A) a teacher, instructor, principal, or administrator;

    (B) another educational professional who works in a school;

    (C) a professional or nonprofessional employee who—

      (I) works in a school; and

      (ii)(I) in the employee's job, maintains discipline or ensures safety; or

      (II) in an emergency, is called on to maintain discipline or ensure safety; or

    (D) an individual member of a school board.

20 U.S.C. § 6733(6).

Swenson has alleged that discrimination occurred concerning how she was treated in her Home-Ec class, by the Pep-Club Advisor, as well as by school personnel.

As specifically provided in the above referred to act, no teacher in a school shall be liable for

harm caused by an act or omission by the teacher on behalf of the school if the teacher was acting within the scope of the teacher's employment or responsibilities and any harm was not caused by the willful or criminal misconduct, gross negligence, reckless misconduct, or conscious, flagrant indifference to the rights or safety of the individual allegedly harmed by the teacher. As discussed in Argument IV, Swenson cannot demonstrate or show any facts that demonstrate bad faith on behalf of the District, let alone willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the Plaintiff.

The Plaintiff is alleging that the Plaintiff was allegedly harmed by the actions of the teachers involved in the Pep-Club, Home-Ec, and/or Senior Trip Advisory capacity and that the District is therefore, liable under respondent superior. Since the individual teachers and/or administrators are immune pursuant to the above stated provision, therefore, the District also is entitled to said immunity.

IX.    **SINCE SWENSON WAS NOT A STUDENT OF STAR VALLEY HIGH SCHOOL, SHE HAS NO STANDING TO ASSERT CLAIMS RELATING TO ANY ALLEGED DEFICIENCIES AT SAID SCHOOL.**

It is undisputed that the Plaintiff did not attend Star Valley High School as a student. (*See* Shantell Swenson Deposition Page 59.) However, the Plaintiff is contending that there were certain violations at Star Valley High School, which interfered with her attendance at certain

activities there, wherein she alleges that she went to Star Valley High School to watch events where relatives were participating.

Any claims that the Plaintiff is alleging under Section 504 of the Rehabilitation Act or the IDEA, have to relate to her ability to obtain a Free Appropriate Public Education. Any events at Star Valley High School have no bearing at all on her obtaining a Free Appropriate Public Education and therefore, she has no standing to assert any such claims.

> **X.    SWENSON HAS NO STANDING TO ASSERT ALLEGED CLAIMS RELATING TO FAILURE TO COMPLY WITH THE DEPARTMENT OF EDUCATION, OFFICE OF CIVIL RIGHTS COMMITMENT TO RESOLVE SINCE SAID ACTION HAS BEEN RESOLVED TO THE SATISFACTION OF THE OFFICE OF CIVIL RIGHTS.**

The Plaintiff has asserted claims alleging that the District failed to comply with the requirements associated with the Commitment to Resolve (CTR) that was entered into between the District and the Office of Civil Rights relating to the complaint that was filed by the Plaintiff and her parents and grandfather.

The Plaintiff has no standing to assert any such claim since that action has been completed and resolved to the satisfaction of the Office of Civil Rights which administrative body had complete jurisdiction over that matter and Swenson did not appeal said decision. As is noted in the deposition of Steve Swenson, Deposition Exhibit 3, the Office of Civil Rights did on July 11, 2002, notify the

District as follows, "In conclusion, OCR finds that the District fulfilled the provisions contained in its March 27, 2001, CTR. Accordingly, we are closing the monitoring of this complaint, effective the date of this letter......We wish to acknowledge the District's prompt and conscientious efforts in resolving this complaint, particularly, Mr. Rick Woodford, who insured that the CTR provisions were met as expeditiously as possible."

The Plaintiff and her parents initially filed the complaint with the Office of Civil Rights, and as a result thereof a Commitment to Resolve was entered into between the Office of Civil Rights and the District, which Commitment to Resolve was completed and the District has fulfilled the provisions thereof. Apparently the Swensons, as usual, are not satisfied with the results of the Office of Civil Rights complaint that they field, however, they have not taken any appropriate action to appeal the ultimate decision associated with that action. They then attempted to file a separate action with the State of Wyoming, Department of Education and did in fact on August 23, 2001, file a complaint with the State. However, as admitted in the Complaint in Paragraph 11, this Complaint was dismissed pursuant to an "Order Denying Hearing Request," (*See* Steve Swenson Deposition Exhibit 6,) wherein the  hearing officer entered an order denying petitioner's request for a due process hearing.

The Plaintiff cannot, through this action, attempt to appeal or complain of the decision of the Office of Civil Rights when she did not in fact appeal that decision and cannot bootstrap any such

claim into this action.  Therefore, any allegations that the Plaintiff has raised relating the District's failure to comply with the Office of Civil Rights matter are barred and the Defendant is entitled to Summary Judgment on that issue.

## **CONCLUSION**

1.  The Plaintiff has no claim under the IDEA since she has graduated from Cokeville High School and therefore, the allegations raised in Count 3 of the Complaint should be dismissed.

2.  The Plaintiff is not entitled to punitive damages under the Rehabilitation Act or the ADA and any claim for punitive damages should be stricken.

3.  Since the District provided SWENSON with a full-time physical aide to assure that she had full access to the school at all times during the school day, the District did not violate the ADA or the Rehabilitation Act.

4.  The Plaintiff cannot demonstrate a violation of the ADA or Rehabilitation Act because she cannot show any facts that demonstrate bad faith on the part of the District.

5.  That any of the Plaintiff's claims associated with the Senior Trip should be stricken because the Plaintiff voluntarily decided not to participate in said trip and advised the Senior Class Officers, who were planning the same, of said decision.

6.    That any claims that the Plaintiff has prior to August 20, 2000, are time barred.

7.    That any claims that the Plaintiff has associated with parking lot associated with activities during the school day should be stricken in that it was not necessary for the Plaintiff to use any handicap parking in the parking lot during that time and therefore, the Plaintiff has no standing to assert said claim.

8.    The District is immune from the allegations associated with the activities of it's teachers pertaining to the Senior Class Trip, the Home-Ec Department, the Pep-Club, and the other specific allegations in the Plaintiff's complaint under the immunity provisions of No Child Left Behind Act.

9.    That the Plaintiff never attended Star Valley High School as a student and therefore, does not have standing to assert any claims under the Rehabilitation Act or the IDEA associated with said school.

10.    The Plaintiff did not appeal the Office of Civil Right's decision and cannot now bootstrap into this case such claims.

11.    The Plaintiff's Complaint fails to state a cause of action against the Defendant, since there are no genuine issues of material fact associated with the allegations contained in the Plaintiff's Complaint and the Defendant is entitled to Judgment as a matter of law dismissing the Plaintiff's Complaint in its entirety and awarding the Defendant its costs and attorney's fees incurred in the defense of the same.

**RESPECTFULLY SUBMITTED** this 14th day of March, 2003.

DENNIS W. LANCASTER
Lancaster Law Offices, P. C.
631 S. Washington Ave., Suite B
P.O. Box 1589
Afton, WY 83110-1589
Attorney for Defendant, Lincoln County School District No. 2

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of March, 2003, a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT, LINCOLN COUNTY SCHOOL DISTRICT NO. 2's, MOTION FOR SUMMARY JUDGMENT** was served as follows:

James R. Bell                          [✔] US Mail
MURANE & BOSTWICK, LLC                 [  ] Facsimile
201 North Wolcott                      [  ] Fed Ex
Casper Wyoming 82601                   [  ] Hand Delivered

*Memorandum in Support of Defendant, Lincoln County School District No.2's,*
*Motion for Summary Judgment*
*Page 31*

Dennis W. Lancaster
Lancaster Law Offices, P.C.
631 So Washington Ave., Suite B
PO Box 1589
Afton, WY 83110
Phone: (307) 885-4529
Fax: (307) 885-4531


# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING


| | | |
|---|---|---|
| SHANTELL SWENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 02CV1062B |
| | ) | |
| LINCOLN COUNTY SCHOOL | ) | |
| DISTRICT NO. 2, A Wyoming | ) | |
| School District, | ) | |
| | ) | |
| Defendant. | ) | |


## <u>AFFIDAVIT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>

**COMES NOW** Jana Dayton being first duly sworn on oath and deposes and states as

follows:

       1.      That my name is Jana Dayton, that I am of adult age and presently reside at Dorm

           4, #278, Rexburg, Idaho 83460 and am a student at the Brigham Young University

Affidavit
Page 1

of Idaho in Rexburg, Idaho.

2.    That during the school year 2001-2002, I was attending school at Cokeville High School in Cokeville, Wyoming, and was a member of the Senior Class Presidency serving in capacity as President.

3.    That as a member of the Senior Class Presidency, I was involved in the preparation of the activities involving the Senior Class, including graduation and the Senior Trip.

4.    That the funds for the Senior Trip were funds that were raised by the individuals of the Senior Class during their tenure at Cokeville High School and the activity was an activity planned by the Senior Class members pursuant to a long tradition of Cokeville High School.

5.    That the activities for the Senior Trip were based on numerous planning meetings involving all members of the Senior Class and it was the tradition that the Senior Class would vote in a democratic manner as to what activity would be involved in the Senior Class and that the funds that the Senior Class had raised over the years would be used to fund that trip.

6.    That meetings were held with the Senior Class members and the Senior Class Advisors, including Janet Smith and Bill Thompson, and most of the Senior Class members participated.

7.    At all of the planning meetings that I attended, various activities were discussed and as a member of the Senior Class Officers, we were instructed by the Senior Class

Affidavit
Page 2

Advisors to consider options that would be available for all class members, including class members that were physically handicapped, including Shantell Swenson.

8.  That in the discussion of the Senior Trip, consideration was given as to activities that would be accessible for Shantell and that this was a factor in the decisions that were made relating to the Senior trip.

9.  That Shantell Swenson specifically advised me, as a member of the Senior Class Presidency, that she did not plan on attending the Senior Trip, that she had other plans to go to Western Wyoming Community College on the date that the Senior Trip was planned and would therefore not be attending.

10. That even though Shantell advised me and other members of the Senior Class that she was not attending, the plans for the Senior Trip ultimately continued to include the possibility of activities that would be accessible for Shantell in the event that she changed her mind.

11. That the Senior Trip was planned to go to Southern Utah to the National parks in that area, that we consulted with various parties who had information concerning this to address the accessibility issue of various activities and we determined that there would be numerous activities that Shantell could do on this trip if she decided to go.

12. That Shantell did not go on the Senior Trip after notifying us that she desired not to and the Trip was completed in the Spring of 2002 just prior to our Senior Class Graduation.

Affidavit
Page 3

13.     Attached hereto is a copy of a statement that I gave relating to this matter, which is

a true and correct copy.

14.     Further Affiant saith not.

DATED this _24_ day of _February_, 2003.


_Jana Dayton_
Jana Dayton


**STATE OF IDAHO**          )
                           ) ss.
**COUNTY OF MADISON**      )

Subscribed and sworn to before me by Jana Dayton, this _24_ day of _February_,
2003.

WITNESS my hand and official seal.


_Charlene Christensen_
Notary Public

Affidavit
Page 4

# CERTIFICATE OF SERVICE

I hereby certify that on the _14th_ day of _March_, 2003, a true and correct copy of the foregoing **AFFIDAVIT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was served as follows:

James R. Bell                    [✔] US Mail
MURANE & BOSTWICK, LLC           [  ] Facsimile
201 North Wolcott                [  ] Fed Ex
Casper Wyoming 82601             [  ] Hand Delivered

Affidavit
Page 5

Class Meeting      January 23, 2002

Notes
Jana opened
Need pics for grad slide show - 4/person by 15 march
    -give pics to Jana, LeNae, Kandyce
Guy is coming friday to measure caps & gowns - bring $
Girls - white      14.95 to rent
Boys - orange      16.95 to buy


Graduation Speaker
Kliss Sparks        *Musical numbers
*Kemmerer guy          class number & a solo
Justin Anderson
Randy Thoman


Senior fundraiser
Breakfast during Jr. Ledge  Apr. 22 & 23 - breakfast 23rd
Valentine's dance


Senior Sneak
Lagoon
Southern Utah & river rafting & camping


Jana Dayton
Jan 23 '02

Senior Class meeting   Wed April 24, 2002

Dave Wade came and told the seniors more about what the hiking would entail. It was brought up about the difficulty of the hike and what to expect. He went over the list with the students and emphasized what to bring. Shantell stated that she would not be going. Morgan was not there, but also stated he couldn't go.

More tents were needed as well as more lanterns. There are three campsites reserved. Dave mentioned that he would like as much stuff brought to his house by Wed. evening. (Tents, ice chest etc.)

It was determined that 17 students - 2 advisors, 1 bus driver & Dave would be going.

Having Marty Linford & Shane Larsen going was brought up, but because of the direction of Mr. Rasband, it was decided that it would be better if only the advisors go.

River rafting was also brought up, but because of distance & time there would be no river rafting

*Bill Thompson*

As president I brought a list of things the senior class needed to bring. Shantell stated she would not need one because she was not going. *Jana Dayton*

As president I talked with Shantell April 30 '02. I asked if she would be participating in the senior trip. She said no she was going to Westary building Community College to Register for college and had a meeting on Saturday. I told her we still wanted her to come and she could if she wanted to. She still declined and said she wasn't going.

Pres. _Jana Dayton_
5/1/02

I was with Jana when she talked to Shantell. She was very kind & sincere when she told her she wanted her to go.

_Janet Smith_
5/1/00

Dennis W. Lancaster
Lancaster Law Offices, P.C.
631 So Washington Ave., Suite B
PO Box 1589
Afton, WY 83110
Phone: (307) 885-4529
Fax: (307) 885-4531

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| SHANTELL SWENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 02CV1062B |
| | ) | |
| LINCOLN COUNTY SCHOOL | ) | |
| DISTRICT NO. 2, A Wyoming | ) | |
| School District, | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DIXIE ROBERTS

| | |
|---|---|
| COUNTY OF LINCOLN | ) |
| | )SS |
| STATE OF WYOMING | ) |

   **COMES NOW,** Dixie Roberts, being first duly sworn on oath and deposes and states as

Affidavit of Dixie Roberts
Page 1

follows:

1.   That my name is Dixie Roberts, that I am of adult age and presently reside in Cokeville, Lincoln County, Wyoming.

2.   That I am presently employed as a para-professional by Lincoln County School District No. 2 and work in the Cokeville Schools in Cokeville, Wyoming.

3.   That I am a Physical Aide for the Lincoln County School District No. 2 and I work with children with special needs who are students in Lincoln County School District No. 2 and are attending schools in Cokeville, Wyoming.

4.   That I know the Plaintiff, Shantell Swenson, in the above entitled matter and that I served as a full-time physical aide for Shantell Swenson from the time she was in the First Grade in Cokeville Elementary School through her graduation at Cokeville High School in May of 2002.

5.   That for the twelve (12) year period in which I served as a physical aide for the Plaintiff, Shantell Swenson, I served as the physical aide assisting her with all physical needs that she may be in need of on a one to one basis for the twelve (12) year period from the time she was in the First Grade through her graduation.

6.   That my duties as the physical aide for Shantell Swenson were that I would be with her on a full-time basis from the time she arrived at school in the morning until she left and that it was my responsibility to make sure that her physical needs were met, including being able to access all parts of the school buildings, being able to go from

class to class, assisting her with taking notes, packing her books and assisting her with any and all needs that she had during the time that she was a student.

7.      That for several years during the time Shantell Swenson attended the Cokeville Schools I also was one of the drivers for the handicap bus and in that capacity I was also involved in transporting Shantell Swenson to and from the school buildings, to and from her home and assisting her to enter the bus, exit the bus, and also assisting her in and out of the school buildings.

8.      That as part of my duties, as Shantell Swenson's physical aide, I would also go with her to all of her classes making sure that she had access to the various parts of the school buildings, I would go to assemblies and all other events that were held any time during the school day, including events in the auditorium, events in the gymnasium, and other locations in the school to make sure that she was able to access and participate in those events.

9.      That during the time I served as Shantell's physical aide, I am not aware of any event that was held during the school day that Shantell was not able to access and obtain appropriate seating, either within the classroom, the auditorium, or the gymnasium and as part of my duties as her physical aide, I made sure that she was able to attend and access said events.

10.     That as part of my duties as Shantell Swenson's full-time physical aide, I also assisted her in her Home-Ec and other related classes assisting her with her needs to

Affidavit of Dixie Roberts
Page 3

the extent that she needed it and I also strongly encouraged her to become more self-supporting and try to do as much as she could but that I, in connection with her resource teachers and other teachers, made certain that she was able to participate and have access to all classes and other events that were held during the school day.

11. That I am not aware of any time that Shantell was attending school, in which I was her full-time physical aide, that she was not able to obtain appropriate seating in the gymnasium, the auditorium or in any of the classrooms during the school day.

12. That Shantell Swenson was afforded transportation in the handicap bus, provided by the School District, up to some time during her Junior year in which she specifically advised that she no longer wanted the District provided transportation and that she would provide for her own transportation to the school building. At that point I was no longer directly involved in transporting her to and from school but that I would meet her at the school in the morning and would stay with her during the entire school day and on numerous occasions I would watch from the school to make sure that she was able to go back to her home, which was located approximately a block from the school. On at least one occasion I was contacted by Shantell requesting that I come to her home to assist her in her home to be able to go to the restroom and on at least one occasion I also went to her home to help her get into her home because of the fact that she was not able to open the door at her home on her own and that there were no family members at her home to assist her.

Affidavit of Dixie Roberts
Page 4

13.    It was my duty and responsibility as her full-time physical aide to make sure that her physical needs, including any and all needs associated with access to all parts of the schools, were accommodated and I assisted her to the extent that she needed it so that she was able to obtain appropriate access.

14.    That I am the mother of a child with disabilities, that I know of the needs associated with children with disabilities, including mobility impairment and I felt that it was my responsibility and duties as her full-time physical aide to make sure that her physical needs were accommodated and that she was able to obtain the opportunities for education that was provided by the School District within the Cokeville Schools.

15.    Further Affiant saith not.

**DATED** this _13_ day of _March_ , 2003.


_Dixie Roberts_
Dixie Roberts


**STATE OF WYOMING**    )
                        ) ss.
**COUNTY OF LINCOLN**    )

Subscribed and sworn to before me by Dixie Roberts, this _13th_ day of _March_ ,
2003.

**WITNESS** my hand and official seal.

_NaDene Dana_
Notary Public

## CERTIFICATE OF SERVICE

I hereby certify that on the _14th_ day of _March_ , 2003, a true and
correct copy of the foregoing **AFFIDAVIT IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT OF DIXIE ROBERTS** was served as follows:

James R. Bell                [✔] US Mail
MURANE & BOSTWICK, LLC       [  ] Facsimile
201 North Wolcott            [  ] Fed Ex
Casper Wyoming 82601         [  ] Hand Delivered

Affidavit of Dixie Roberts
Page 6

Dennis W. Lancaster
Lancaster Law Offices, P.C.
631 So Washington Ave., Suite B
PO Box 1589
Afton, WY 83110
Phone: (307) 885-4529
Fax: (307) 885-4531

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| SHANTELL SWENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 02CV1062B |
| | ) | |
| LINCOLN COUNTY SCHOOL | ) | |
| DISTRICT NO. 2, A Wyoming | ) | |
| School District, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>AFFIDAVIT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>

**COMES NOW** Violet Teichert being first duly sworn on oath and deposes and states as

follows:

1.      That my name is Violet Teichert, that I am of adult age and presently reside at 714

Downy #10, Laramie, Wyoming 82070 and am a student at the University of

Affidavit
Page 1

Wyoming.

2.    That during the school year 2001-2002, I was attending school at Cokeville High School in Cokeville, Wyoming, and was a member of the Senior Class Presidency serving in capacity as Secretary.

3.    That as a member of the Senior Class Presidency, I was involved in the preparation of the activities involving the Senior Class, including graduation and the Senior Trip.

4.    That the funds for the Senior Trip were funds that were raised by the individuals of the Senior Class during their tenure at Cokeville High School and the activity was an activity planned by the Senior Class members pursuant to a long tradition of Cokeville High School.

5.    That the activities for the Senior Trip were based on numerous planning meetings involving all members of the Senior Class and it was the tradition that the Senior Class would vote in a democratic manner as to what activity would be involved in the Senior Class and that the funds that the Senior Class had raised over the years would be used to fund that trip.

6.    That meetings were held with the Senior Class members and the Senior Class Advisors, including Janet Smith and Bill Thompson, and most of the Senior Class members participated.

7.    At all of the planning meetings that I attended, various activities were discussed and as a member of the Senior Class Officers, we were instructed by the Senior Class

Affidavit
Page 2

Advisors to consider options that would be available for all class members, including class members that were physically handicapped, including Shantell Swenson.

8.     That in the discussion of the Senior Trip, consideration was given as to activities that would be accessible for Shantell and that this was a factor in the decisions that were made relating to the Senior trip.

9.     That Shantell Swenson specifically advised me, as a member of the Senior Class Presidency, that she did not plan on attending the Senior Trip, that she had other plans to go to Western Wyoming Community College on the date that the Senior Trip was planned and would therefore not be attending.

10.    That even though Shantell advised me and other members of the Senior Class that she was not attending, the plans for the Senior Trip ultimately continued to include the possibility of activities that would be accessible for Shantell in the event that she changed her mind.

11.    That the Senior Trip was planned to go to Southern Utah to the National parks in that area, that we consulted with various parties who had information concerning this to address the accessibility issue of various activities and we determined that there would be numerous activities that Shantell could do on this trip if she decided to go.

12.    That Shantell did not go on the Senior Trip after notifying us that she desired not to and the Trip was completed in the Spring of 2002 just prior to our Senior Class Graduation.

Affidavit
Page 3

13.     That I was contacted by Shantell's parents, Steve and Pat Swenson, on or about April

30, 2002, and they thanked me for attempting to accommodate Shantell on this trip.

14.     Attached hereto are copies of the notes and other documents that I prepared as the

Secretary of the Senior Class relating to this trip.

15.     Further Affiant saith not.

DATED this 26 day of February , 2003.

*Violet Teichert*
Violet Teichert

**STATE OF WYOMING**     )
                          ) ss.
**COUNTY OF ALBANY**      )

        Subscribed and sworn to before me by Violet Teichert, this 26 day of February , 2003.

        **WITNESS** my hand and official seal.

MAUREEN ANNE MORRISON-NOTARY PUBLIC
County of Albany     State of Wyoming
My Commission Expires April 9, 2006

*Maureen Anne Morrison*
Notary Public

Affidavit
Page 4

# CERTIFICATE OF SERVICE

I  hereby certify that on the _24th_ day of _March_ , 2003, a true and

correct copy of the foregoing **AFFIDAVIT IN SUPPORT OF MOTION FOR SUMMARY**

**JUDGMENT** was served as follows:


James R. Bell                         [✔ ] US Mail
MURANE & BOSTWICK, LLC         [   ] Facsimile
201 North Wolcott                     [   ] Fed Ex
Casper Wyoming 82601                 [   ] Hand Delivered


Affidavit
Page 5

Senior Class Meeting, held on February 6, 2002

Jana Opened

Saturday
March 9th - Discussed fund raiser — Donkey basketball & ~~selli~~
baked goods

Possibility of still doing the breakfast at Jr. Lege

14th February Sweetheart's dance - 3? Overruled

Regular Dance was suggested & voted for.

Cherokee was mentioned for an activity in the dan

Suggested DJ - Nathan Fiscus ⟶ Josh's responsibility

Cherokee machine - ask Jade Pope

$3.00 charge

Violet volunteered for posters for the dance

Girls bring baked something - boys bring beverage

~~scribbled out text~~

Jana will organize Sr. Sneak & we'll have class meeting
about it.

February 19

Donkey Basketball
Boys in charge of donkeys
Girls in charge of concessions
Jana will hand out assignments.

Senior Sneak
Jana talked to Dave Wade & mentioned Bryce Canyon.
Violet mentioned Shantell & she said she wasn't going.
Hikes, Museums, Canoeing, ATV's, horseback-riding
Jana asked class for opinion.
Jana checked on Park facilities and handicapped-accessible campground

Tr Ledge
looks like breakfast is on.
LeNae volunteered to organize breakfast

Donkey Basketball tickets will be handed out as soon as they come.

Violet Rose Teichert

March 4

Handed out tickets for Donkey basketball
- Clyda & Janet Dayton / ticket takers
- Girls baked goods. Be there at 9:00 - Everyone
Need poopie-scoopers : Tiff volunteered to find
younger classmen.

Senior Trip
- Bryce Canyon - decision made
- Dave Wade will be our tour guide
- Main activities will be hiking.
- Alternative activities - museum in Panguich, canoeing in
Escalante
- ATV's cost $75/day - ruled out
- Park and activities, except hikes, will be accessible
for Shantell.
- Make choice to go on hike or ATV Activity
- Kodachrome Basin camp is handicapped
Accessible.
- Showers & Restrooms

Jr. Ledge Breakfast
- Mr. Metcalfe planned menu
- Hash browns, Pancakes, eggs, OJ.

Violet Rose Teichert

April 30th

Pat Swenson thanked me for trying to accomodate Shantell & told me she & Steve came by my house the night before to thank me, but I was gone.

Violet RoseTeichert
5/1/02